UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANSON CRAWFORD CRUM FAMILY LAW GROUP, LLP,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JEFFREY GRAHAM RANDALL,<br><br>　　　　　Defendant. | Case No. 18-cv-03371-VC, 19-cv-01818-VC<br><br>**ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 78, 89 (18-cv-03371-VC) |
| JEFFREY GRAHAM RANDALL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HANSON CRAWFORD CRUM FAMILY LAW GROUP, LLP,<br><br>　　　　　Defendant. | |

The parties have filed cross-motions for summary judgment. Randall's motion is denied. Hanson Crawford Crum's motion is also denied, but only because the presentation by both sides does not enable the Court to decide the choice-of-law question. This is not a jury question, so it will need to be adjudicated at the pretrial conference. The parties, including Joseph Crawford himself, must appear in person at a case management conference on December 18, 2019 in Courtroom Four at 10:00 a.m.

1.　Randall seeks summary judgment on Hanson Crawford Crum's claim for breach of contract on the basis that the agreement is voidable because the parties did not comply with

California Business & Professions Code section 6147. Section 6147 requires all contingency fee agreements between lawyers and clients to be in writing and to contain certain provisions, such as a statement of the agreed-upon rate and a statement regarding financial responsibility for litigation costs. But section 6147 does not apply here, because the agreement between Randall and the law firm was not a contingency fee agreement.

To be sure, the first page of the contract states: "This agreement is made pursuant to Business & Professions Code § 6147 and is intended to fulfill the requirements of that section." Dkt. 91-2 at 2. But this was obviously a drafting error. Aside from that sentence, the contract makes clear that it was not a contingency fee agreement. The contract states that "Client will pay Law Firm the attorney and paralegal fees for the legal services provided under this Agreement at the respective hourly rates of the individuals providing the services as well as costs set forth below." Dkt. 91-2 at 2. It lays out the hourly rates that the law firm charges for its various attorneys and staff. *Id.* at 2-3. It discusses administrative costs, and also requires a retainer deposit of $15,000, to be replenished as needed to pay for monthly bills. *Id.* at 4-5. Furthermore, the firm agrees to "refund to Client any unused portion of the retainer" upon "the completion of representation." *Id.* at 4.[1]

Given the context, this is not a case of an ambiguous contract that must be construed against the drafter. It's a case of inadvertent reference to section 6147. Admittedly, this was particularly sloppy drafting—sloppier than your typical drafting error. *See, e.g., Heidlebaugh v.*

---

[1] It's also worth noting that lawyers representing clients in family law matters typically cannot make contingency fee agreements. *See* California Rules of Professional Conduct 1.5(c) ("A lawyer shall not make an agreement for . . . any fee in a family law matter, the payment or amount of which is contingent upon the securing of a dissolution or declaration of nullity of a marriage or upon the amount of spousal or child support, or property settlement . . . ."); *but see Krieger v. Bulpitt*, 40 Cal. 2d 97, 100-01 (1953) (enforcing contingent fee contract in a divorce action where contract was for the defense of an already-initiated dissolution action).

*Miller*, 126 Cal. App. 2d 35, 40 (1954) (interpreting "with or with notice" as "with or without notice"). But it would have made no sense to include so many detailed provisions regarding a retainer and the regular payment of fees in a contingency fee contract, so the only possible explanation for the reference to section 6147 is that it was an error. Perhaps the drafters meant to say "6148." Or perhaps it was a bad cut-and-paste job. But regardless, it was indisputably a drafting error. Thus, the requirements of section 6147 don't apply, and Randall's motion for summary judgment on this basis is denied.

2.  Since Hanson Crawford Crum contracted with Randall on a non-contingency basis, section 6148 of the Business and Professions Code, rather than section 6147, applies. Section 6148(a) sets out various requirements for such fee agreements where it is reasonably foreseeable, as it was here, that the total expenses for the client will exceed $1,000. These requirements include that the contract be in writing, that the attorney provide the client a duplicate copy of the contract signed by both parties, and that the contract contain both the basis for the attorney's compensation and "the general nature of the legal services to be provided." § 6148(a). The signed agreement between the parties met all these requirements. Thus, to the extent Randall seeks summary judgment on the breach of contract claim on the basis that the signed agreement failed to comply with section 6148, that request is denied.

But Randall is correct that the signed agreement had a limited scope. Under the heading "Scope of Legal Services," the contract read, in part:

> Law Firm agrees to represent you in your family law proceeding with SALLY RANDALL as opposing party. Law firm will not represent Client in any other matters unless and until a specific request has been made by Client which the Law Firms confirms by written agreement.

Dkt. 91-2 at 2. The contract therefore constitutes compliance with section 6148 only with respect to Hanson Crawford Crum's representation of Randall in his divorce – that is the "general nature

of the legal services to be provided." *See* § 6148(a)(2). The contract did not encompass the paternity dispute. So to the extent that Hanson Crawford Crum seeks to recover unpaid attorney fees related to the paternity representation as contract damages, it needs to show that that representation was based on some other contractual agreement. And it needs to show that the other agreement also complied with section 6148.

Neither party has presented much evidence on the question of when or how a separate contract formed for the paternity representation (putting section 6148 aside for a moment). In its complaint, Hanson Crawford Crum alleged breach of a single "agreement" encompassing both the divorce and paternity representations. Dkt. 1-1 ¶ 25. Now, the firm seems to argue that a second, separate contract formed when it began representing Randall in the paternity dispute.[2] Much of the evidence presented to support this argument raises questions about the credibility of Hanson Crawford Crum and the lawyers representing it in this case. In particular, the declaration of Joseph Crawford falsely asserts that Randall requested the firm's representation in the San Mateo County paternity action in an email dated April 28, 2015. Dkt. 91-1 at 3; 96-3 at 2. The text of the email says nothing close to that; in fact, it strongly implies that the law firm was not representing him in a paternity action at that time. The Crawford declaration also asserts that Randall orally requested that the firm represent him in the San Mateo County paternity action around the same date, but it appears from the (admittedly incomplete) evidence submitted by the parties that there *was no* San Mateo paternity action as of that date (although apparently there was a related paternity action pending in Nevada for which Hanson Crawford Crum was not providing representation).[3]

---

[2] This raises a question whether the firm needs to seek leave to amend its complaint to conform to proof. *See*, *e.g.*, *Crawford v. Gould*, 56 F.3d 1162, 1168 (9th Cir. 1995).

[3] Incidentally, while the email exchange contains no request from Randall that the firm represent

Although the evidence discussed above hurts rather than helps the law firm's argument, there is other evidence from which a jury could conclude that, at some point, the parties reached some sort of agreement that the firm would represent Randall in the San Mateo paternity action. For example, the bills submitted by Hanson Crawford Crum suggest that there was eventually some sort of agreement about Hanson Crawford Crum's representation of Randall in the paternity action. *See, e.g.*, Dkt. 91-6 at 148 (bill for "Randall Paternity Action").[4] In addition, an email exchange between Crawford and Randall on August 14, 2015 suggests an agreement: Crawford complained that Randall hadn't been paying his bills for work performed in the paternity action, and Randall responded that he "paid the bills a couple days ago thru my BofA account." Dkt. 96-5. Thus, viewing the evidence in the light most favorable to the non-moving party (that is, the law firm), there is a genuine dispute of fact regarding whether some sort of contract existed—at least at some point—for the paternity representation.

The more difficult summary judgment question regarding the law firm's breach of contract claim as it relates to the paternity action is whether the agreement to represent Randall, assuming one existed, complied with section 6148. It is undisputed that there was no signed written agreement, which the statute generally requires. But the firm argues that the fee agreement for the paternity action wasn't subject to the requirement of a signed writing, because it fell within the statutory exception listed in section 6148(d)(2) for "[a]n arrangement as to the

---

him in a paternity action, it raises questions about Randall's own credibility as well. The email exchange may reflect an effort on the part of Randall (who is an attorney) to conceal documents relevant to the paternity action that was apparently pending in Nevada. Dkt. 96-2 ("My custody/visitation dispute with Brianna is heating up. What files are public in my divorce proceeding? Just the complaint and docket? What about my declarations and financial statements? . . . . Can't we transfer the court file or lose it, given our agreement to mediate and assign a private judge?").

[4] At least for purposes of establishing that an agreement existed, the bills are not hearsay because they would not be admitted for the truth of the matters asserted in them.

fee implied by the fact that the attorney's services are of the same general kind as previously rendered to and paid for by the client." *See* California Business & Professions Code § 6148(d)(2).

There is a good deal of evidence that the agreement did not fall within this exception. Most obviously, in June 2015 the firm drafted a new agreement for the paternity representation and sent it to Randall for signature. And in August, when Crawford emailed Randall about his delinquent payments, he noted parenthetically: "You also have not returned the fee agreement for the paternity case . . . . If you want us to represent you in that case I need that fee agreement signed by you and returned to me with the retainer and payment of the outstanding bill." Dkt. 96-5. This seems to suggest that the law firm did not believe, at the time, that its work in the paternity action qualified under section 6148(d)(2). One could easily imagine a jury relying on this to conclude that the work indeed did not qualify—why was the firm insisting on Randall's signature on a "fee agreement" if they already had an implied-in-fact fee agreement? On the other hand, perhaps a jury could interpret this email as reflecting that, even if the parties had an implied-in-fact contract "as to the fee" (which is what section 6148(d) is concerned with), Crawford wanted a more comprehensive agreement to define the terms and scope of representation in the paternity action, particularly given the trouble the firm was having in getting Randall to pay his bills.

Furthermore, although the parties have offered virtually no evidence on this point, it seems at least possible (though perhaps not likely) that the services Hanson Crawford Crum rendered for the paternity dispute were "of the same general kind" as those it performed in the divorce dispute, given that both representations appear to have involved litigation in San Mateo Superior Court on possibly overlapping factual issues. *See Leighton v. Forster*, 8 Cal. App 5th

467, 489 (2017). Thus, Randall has not definitively shown the absence of an implied-in-fact contract as to fees for the paternity representation, and summary judgment is denied with respect to the claim for breach of contract as it relates to the paternity action as well.

3.  Randall also seeks summary judgment on Hanson Crawford Crum's alternative claim for quantum meruit. Claims for quantum meruit have a statute of limitations of two years, and the general rule in the context of legal services is that the limitations period commences when a lawyer's representation of a client in a particular matter terminates. *See Brooks v. Van Winkle*, 161 Cal. App. 2d 734, 743 (1958); *Osborn v. Hopkins*, 160 Cal. 501, 507 (1911). Some California courts have contemplated that the commencement of the limitations period for a quantum meruit action might be delayed if a defendant kept paying his or her debts after the plaintiff's services had ended. *See Long v. Rumsey*, 12 Cal.2d 334, 343 (1938) ("In effect, the contention is that such a situation constitutes an exception to the usual rule and delays the running of the statute . . . ."); *Iverson, Yoakum, Papiano & Hatch v. Berwald*, 76 Cal. App. 4th 990, 996 (1999) (citing *Long*); *see also Leighton*, 8 Cal. App. 5th at 490. But here, the date of last payment preceded the date of termination of services, so that exception doesn't apply. Instead, the general rule governs, which is that the limitations period commenced when Hanson Crawford Crum completed its legal services for Randall. And it's undisputed that the firm's services terminated less than two years before it filed its lawsuit against Randall. Therefore, the quantum meruit claims are not time-barred.

Randall also argues that Hanson Crawford Crum has offered no admissible evidence to raise a genuine dispute of material fact regarding the reasonable value of the firm's services to Randall. But that's wrong. Crawford's declaration describes the general type of legal services the firm provided Randall, for which Randall paid over $200,000 in fees. Dkt. 91-1 ¶ 10, 11. It also

states that Randall had an outstanding balance of close to $4,000 after his last payment, and that the firm continued to provide services to him for another five months. *Id.* ¶ 16. The firm has also produced billing records which appear to describe its services in detail, and the amounts that the firm charged for those services. Randall argues that these bills are inadmissible, citing *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). But Rule 56 was amended in 2010 to clarify that parties may object to evidence at summary judgment that "*cannot be presented* in a form that would be admissible in evidence." Federal Rule of Civil Procedure 56(c)(2) (emphasis added); *see also Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003); *Singleton v. Lopez*, 577 Fed. App'x 733, 736 (9th Cir. 2014) ("It is not controlling at the summary judgment phase that the evidence was hearsay, so long as the evidence could be presented in an admissible form at trial."). Based on Crawford's declaration, it seems highly likely that the bills could be admitted at trial as business records, even if Crawford did not do a good job of laying that foundation. *See* Dkt. 91-1 ¶ 10. Thus, Randall's motion for summary judgment on the quantum meruit claim is denied.[5]

4.   Randall's motion for summary judgment on the account stated claim is denied. The elements of an account stated are "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; [and] (3) a promise by the debtor, express or implied, to pay the amount due." *Leighton,* 8 Cal. App. 5th at 491. Crawford's declaration states that Randall paid over $200,000 to the firm over a period of years in response to monthly billing

---

[5] Incidentally, with respect to the hearsay objection, it's not clear whether the bills are being offered for the truth of the matter asserted when offered to show reasonable value. At trial, of course, Hanson Crawford Crum will need a clearer theory of the relationship between the bills and the reasonable value of the firm's services, and it will need to do a better job than it did at summary judgment of explaining why the materials it offers are admissible.

statements and invoices, and that the firm continued to send bills to Randall throughout their representation and after. Dkt. 91-1 ¶ 10; Dkt. 91-6.[6] And California courts hold that failure to object to a bill within a reasonable time can constitute implied acquiescence sufficient for an account stated. *See Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600 (1969).

It's doubtful that Hanson Crawford Crum will be able to prevail on this claim, because the evidence presented with this motion suggests that Randall often didn't pay his bills and stopped paying them entirely for the last five months of the representation. *See, e.g.*, Dkt. 91-7 at 3. This conduct doesn't seem likely to constitute implicit assent to the debts stated in the bills, much less a promise to pay them. *See Maggio, Inc. v. Neal*, 196 Cal. App. 3d 745, 753 (1987). But while Randall has offered, on supplemental briefing, his own deposition testimony asserting that he objected to some bills, he does not claim that he objected to every bill, nor has he produced enough correspondence or other evidence to show that no reasonable juror could conclude that he impliedly assented to the amounts. *See* Dkt. 114-2 at 35. And unlike in *Leighton*, the case on which Randall primarily relies, it seems probable that a debtor-creditor relationship was established here after several years of paid bills, based at least partially on a valid contract. *See Leighton*, 8 Cal. App. 5th at 493; *Ordinario v. LVNV Funding, LLC*, 721 Fed. App'x 602, 603 (2017) (finding debtor-creditor relationship where there were previous transactions of monthly statements and subsequent payments); *see also Crane v. Stansbury*, 173 Cal. 631, 636 (1916); *cf. Trafton v. Youngblood*, 69 Cal. 2d 17, 26 (1968).

---

[6] These bills do not constitute hearsay when offered to prove an account stated, because they constitute new contracts (i.e., verbal acts), and are therefore not offered for their truth. *See Gleason v. Klamer*, 103 Cal. App. 3d 782, 786–87 (1980) ("When the account is assented to, it becomes a new contract. An action on it is not founded upon the original items, but upon the balance agreed to by the parties."); *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992) ("A contract . . . is a form of verbal act to which the law attaches duties and liabilities and therefore is not hearsay.").

Claims for account stated typically have a statute of limitations of four years. *See* California Code of Civil Procedure § 337(b)(2). California courts, however, have held that the four-year statute of limitations does not apply in the attorney-client context when there is no valid contract that meets the requirements of section 6148, and that a two-year statute of limitations applies instead. *See Leighton*, 8 Cal. App. 5th at 493; *Iverson*, 76 Cal. App. 4th at 997; California Code of Civil Procedure § 339. Unless there is some basis not presented at summary judgment for concluding that the signed agreement was not a valid contract, any account stated pertaining only to the services covered under that agreement (the divorce representation) is subject to a four-year statute of limitations. But since there is a genuine dispute of fact regarding the existence of a valid contract for the paternity representation, the applicability of the four-year statute of limitations cannot be determined at this stage for any accounts stated related to that representation.[7] In the absence of a valid contract, a two-year statute of limitations would apply to the accounts stated claim, meaning that Hanson Crawford Crum would have to show that the bills sent after January 24, 2016 constituted accounts stated. *See Iverson*, 76 Cal. App. 4th at 997.[8]

5. Hanson Crawford Crum's cross-motion for summary judgment is denied. The main dispute between the parties is whether California law or Nevada law provides the applicable statute of limitations for Randall's claims for malpractice, breach of fiduciary duty, and fraud, which were originally filed in the District of Nevada but were then transferred here to be adjudicated alongside the law firm's claims against Randall for breach of contract and Randall's

---

[7] Although the evidence is not entirely clear, Hanson Crawford Crum appears to have sent separate bills for the two representations.

[8] It seems possible, however, that if Hanson Crawford Crum could prove that one of the bills sent after January 24, 2016 constituted an account stated, then the firm might be able to recover all of the debts stated in that bill, including those for services rendered prior to the commencement of the limitations period.

counterclaim for breach of contract. If Nevada's choice-of-law rules apply to the claims originally filed in Nevada, then Nevada's statute of limitations may well apply, even if the substantive law of California applies. And it is undisputed that Randall's Nevada lawsuit was filed within Nevada's limitations period. If California's choice-of-law rules apply to these claims, then that will almost certainly result in application of California's statute of limitations. And it is undisputed that Randall's Nevada lawsuit was not filed within California's limitations period.

The parties have not given the Court enough information to answer this potentially dispositive legal question regarding choice of law. Under the default rule for choice of law in diversity cases, a federal court applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941). But when a case is transferred pursuant to 28 U.S.C. § 1404(a), generally the federal court must apply the choice-of-law rules that would have applied in the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). In other words, as applied here, since Randall's tort claims were filed in the District of Nevada and transferred here pursuant to section 1404(a), this Court would generally be required apply the choice-of-law rules that the District of Nevada would have applied—namely, Nevada's choice-of-law rules.

However, the *Van Dusen* rule does not apply when a case is transferred because venue was improper in the transferor court, or because personal jurisdiction was lacking there; in those cases the transferee court applies the default *Klaxon* rule for choice of law. *Nelson v. International Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983); *Manley v. Engram*, 755 F.2d 1463, 1467 (11th Cir. 1985). Furthermore, even in cases where a case is transferred under section 1404(a), the transferor court's "characterization of the transfer is not controlling." *Muldoon v.*

*Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993). Instead, in those cases the transferee court must ascertain whether the lawsuit was properly filed in the transferor court, and consequently whether the plaintiff is indeed entitled to the choice-of-law rules of the transferor court. *Id.*

Here, Hanson Crawford Crum moved to dismiss Randall's complaint in Nevada for lack of personal jurisdiction and improper venue, and moved in the alternative (as defendants often do in this situation) to transfer the case to this district for the convenience of the parties and in the interest of justice under section 1404(a). Dkt. 96-6 at 2. The District of Nevada "purported to transfer the case under § 1404(a)," but declined to reach the questions of personal jurisdiction and improper venue. *See Muldoon*, 1 F.3d at 967; Dkt. 96-7 at 2-3. Therefore, in determining which state's choice-of-law rules to apply (which will likely dictate which state's statute of limitations to apply), the Court needs to determine whether Randall's lawsuit was properly filed in Nevada. The parties have submitted no evidence or argument addressing this issue. Indeed, they have hardly offered anything useful on these choice-of-law questions at all. Accordingly, the Court must deny Hanson Crawford Crum's summary judgment motion based on California's statute of limitations. However, because this is a pure legal question, it must be resolved before the case goes to trial, so the Court will decide the question at the pretrial conference. The parties must file a new round of briefs, with supporting evidence, on whether personal jurisdiction and venue were proper in Randall's Nevada action.

In their papers, the parties should address three additional issues. First, Hanson Crawford Crum also argued in the District of Nevada that Randall's tort claims were compulsory counterclaims and that his complaint should be dismissed or transferred to this Court under the first-to-file rule. Dkt. No. 15 at 4 (Case No. 19-cv-01818). As with personal jurisdiction and

venue, the District of Nevada did not reach this issue. Dkt. 96-7 at 3. There appears to be—at the very least—significant overlap between Randall's counterclaim for breach of contract filed in the California case, and his claims for legal malpractice, breach of a fiduciary duty, and fraud filed in the Nevada case. Some courts have suggested that the *Van Dusen* rule should not be applied under these circumstances. *See Volvo Construction Equipment North America v. CLM Equipment Co.*, 386 F.3d 581, 600 (4th Cir. 2004) ("[A]pplying Arkansas law to the Arkansas claims and North Carolina law to the North Carolina counterclaims could (in theory, at least) lead to different results on identical claims. It therefore seems clear that the choice-of-law rules of only one state should be applied to this action."). On the other hand, an unpublished decision of the Ninth Circuit (which this Court is not required to follow) states that "the *Van Dusen* rule applies to transfers under the compulsory counterclaim and first-to-file rules," although it's not immediately clear whether the problem of duplicative claims was at issue in that case. *See Commercial Money Center v. Safeco Insurance Co. of America*, 605 Fed. App'x 609, 611 (9th Cir. 2015) (unpublished).[9] Accordingly, the parties should discuss whether Randall's lawsuit was improperly filed in Nevada because the claims in that suit were compulsory counterclaims in the California action, and if so whether the Court should apply the principle articulated by the Fourth Circuit in *Volvo Construction*.

Second, even if Nevada choice-of-law rules apply to Randall's tort claims, it's not

---

[9] Incidentally, if California choice-of-law rules apply to Randall's counterclaim filed in California, then it seems possible that the counterclaim would be outside the applicable limitations period as well. *See* California Code of Civil Procedure § 340.6; *Southland Mechanical Constructors Corp. v. Nixen*, 119 Cal. App. 3d 417, 431 (1981) (applying section 340.6 to breach of contract action); *Vafi v. McCloskey*, 193 Cal. App. 4th 874, 881 (2011) ("Based on its plain language, section 340.6 applies to all actions, except those for actual fraud, brought against an attorney 'for a wrongful act or omission' which arise 'in the performance of professional services.'). Randall's argument that his counterclaim is not directed to any "wrongful act or omission" is unpersuasive.

entirely clear that the Nevada statute of limitations would apply. An unpublished decision of the Ninth Circuit suggests that the Nevada statute of limitations would indeed apply, while a case from the District of Nevada suggests that the state with the most significant relationship to the lawsuit would provide the applicable statute of limitations. *See Asian American Entertainment Corp. v. Las Vegas Sands, Inc.*, 324 Fed. App'x 567, 568-69 (9th Cir. 2009) (unpublished); *Deboles v. National Railroad Passenger Corp.*, 2012 WL 607609, at *3 (D. Nev. Feb. 24, 2012); *see also* Restatement (Second) of Conflict of Laws § 142, cmt. G (Am. Law Inst. 1988) ("[W]here the domicil of the plaintiff is in the state of the forum and that of the defendant is in the other state with the most significant relationship to important issues in the case [and a shorter statute of limitations] . . . the forum should entertain the claim only in extreme and unusual circumstances.").

Third, even if the Nevada statute of limitations applies to Randall's tort claims, it seems likely that those same claims would be governed by the *substantive* law of California, since that is likely the state with the most significant relationship to this case. *See General Motors Corp. v. Eighth Judicial District Court*, 122 Nev. 466, 473 (2006) ("[T]he Second Restatement's most significant relationship test governs choice-of-law issues in tort actions unless another, more specific section of the Second Restatement applies to the particular tort."); *Dictor v. Creative Management Services., LLC*, 126 Nev. 41, 46 n.5 (2010) ("[C]ourts are not bound to decide all issues in a case under the local law of only one state, but rather each issue should be separately considered.").

6. The Court will not grant partial summary judgment to Hanson Crawford Crum pursuant to its authority under Federal Rule of Civil Procedure 56(f), as there appear to be genuine

disputes of material fact regarding, at the least, whether Hanson Crawford Crum adequately performed under the signed agreement that covered the divorce action.

*   *   *

It does not appear that the parties will be able to file meaningful briefs and accompanying evidence addressing the issues raised in Section 5 in time for the pretrial conference. Accordingly, the Court is prepared to grant a short continuance of the trial, the pretrial conference, and the deadlines associated with the pretrial conference. An in-person case management conference will take place on December 18, 2019 at 10:00 a.m. The Court will not permit any party to participate by phone. In addition, Joseph Crawford must personally appear, and he is ordered to read this ruling in advance. At the conference, the parties should be prepared to set new dates for trial and the pretrial conference, along with a briefing schedule for their pretrial briefs regarding choice of law.

**IT IS SO ORDERED.**

Dated: December 9, 2019

VINCE CHHABRIA
United States District Judge